## Shisler *versus* Baxter.

1. In the absence of deceit and express warranty by a vendor, mere representations as to the quality of the thing sold do not constitute a warranty, and are evidence of none.

2. In a sale of personal property on inspection where the vendee's means of knowledge are equal to the vendor's, the vendor does not contract that the thing sold is of the species contemplated by the parties.

3. The plaintiff, a market gardener, in 1881 purchased some seeds of the defendant known as "Wakefield Cabbage" seeds, which produced an excellent crop of cabbages. In the following year the plaintiff desired to obtain some more of this seed; went accordingly to the defendant's store and asked him if he had "any more of Wakefield cabbage seed, same as in 1881." The defendant replied that he had some of the old stock, and produced some seed in envelopes which were laid upon the shop counter. It was shown that it was impossible to distinguish Wakefield cabbage seed by its appearance. The plaintiff purchased a quantity of the seed and planted it, but it did not produce Wakefield cabbages. Some of the plants were cabbages like the Wakefield, others resembled drum, and others cauliflower, worth little or nothing. In an action on the case to recover damages thus occasioned:

   *Held*, that in the absence of evidence tending to show fraud or express warranty by the vendor he was not liable, and that therefore a nonsuit was rightly entered by the court below.

April 1st, 1885. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT and CLARK, JJ. PAXSON and GREEN, JJ., absent.

ERROR to the Court of Common Pleas No. 1, of *Philadelphia county:* Of July Term 1884, No. 155.

This was an action on the case by Josiah Shisler against John C. Baxter and Frank C. Baxter, trading as Baxter Brothers. The narr. alleged that the plaintiff in June, 1882, was engaged in truck farming, and wanted seed called Wakefield cabbage seed for planting; that he had previously bought of the defendants a part of a certain lot of that seed which had produced cabbages known as Wakefield cabbages; that the plaintiff at the time mentioned went to the defendants to buy more of that seed; that the defendants falsely warranted a certain lot of seed to be Wakefield cabbage seed, and sold the said seed to the plaintiff as Wakefield cabbage seed, good to produce Wakefield cabbages; that in truth the seed was not Wakefield cabbage seed, but produced a crop of imperfect and valueless plants; wherefore he was damaged, &c. The defendants pleaded the general issue.

At the trial, before PEIRCE, J., the plaintiff testified in his own behalf as follows: "In June, 1882, I went to Baxter's and asked him if he had any more Wakefield cabbage seed, same as he had in 1881. He said he had eight or ten pounds

of the old seed of 1881. I asked him if it was the old seed.
He said it was. He said the new crop had not been harvested
yet; he had no new seed in. . . . . . He said it was all right.
We called it Wakefield cabbage seed. I purchased eight
pounds and a half altogether; paid five dollars a pound;
used a pound and a half for myself; sowed it September
12th, 1882. Wintered the plants all winter. They should
have matured by June, 1883; they did not so mature; they
matured about latter part of July and in August. The pro-
duct was not Wakefield cabbage; there were all varieties in
it; some you couldn't call cabbage at all. I had about two
acres. There were say five heads out of a hundred resembling
Wakefield, but didn't call it Wakefield; it did not grow as
the Wakefield should grow; did not produce Wakefield cab-
bage. Balance of crop was drum in appearance; didn't call
it drum-head—something resembling a collard, a species of
cabbage; something resembling a cauliflower. Balance very
wild; couldn't tell what it was. The small lot like Wakefield
he sold, but not at Wakefield prices. The drum came into a
cheap market. The rest was worthless. . . . . . I lost about
$500." *Cross-examined*—" Have dealt with Baxter eight or
ten years; I always bought the seed in papers [paper shown
witness]; it was in paper like that. I didn't see that on the
back of it . . . . . He opened the drawer and said he had got
some of that old stock of Wakefield cabbage seed, same as I got
in 1881. He got it out on the counter. . . . . . I kept my seed
till I sowed it; it looked like cabbage seed." *Re-examined*—
" Cannot judge as to cabbage from seed itself; we can tell
resemblance when we go to transfer to boxes. When we re-
planted, the plants were four or five inches high. There was
nothing in their appearance then by which I could tell posi-
tively that they were Wakefield. About three weeks after
we planted them in the spring I found cabbage did not look
right; found mixtures amongst them; at times found it grow-
ing wild. There was nothing before this to put me on guard
that it was not Wakefield. . . . . . Baxter did not call my
attention to what was printed on envelopes. He did not at
any time mention to me the name of Bolgiano or B. & C. He
never told me he was acting for B. & C."

Other witnesses corroborated the plaintiff's testimony, and
several of them who had likewise purchased seeds from the
same lot, testified similarly as to its product.

At the conclusion of the plaintiff's evidence the court en-
tered judgment of nonsuit, which the court in banc refused
to take off. Whereupon the plaintiff took this writ, assign-
ing for error the action of the court in entering said judgment
of nonsuit.

[Shisler v. Baxter.]

*William W. Wiltbank* (with whom were *James Crowe* and *Henry Reed*, for plaintiff in error.—(1) In the contract of sale the goods delivered must be of the kind or species contracted for. This does not depend upon any contract of warranty, but upon the nature of the thing sold or contracted for, and a violation of this rule is not a breach of warranty, but rather a non-compliance with the contract which the vendor has engaged to fulfil : Lord ABINGER in Chanter v. Hopkins, 4 M. & W., 404. In Eagan v. Call, 10 Casey, 237, STRONG, J., distinguishes such cases from those of sale by sample : Borrekins v. Bevan, 3 Rawle, 39 ; McFarland v. Newman, 9 Watts, 57 ; Whitaker v. Eastwick, 25 P. F. S., 231 ; Fraley v. Bispham, 10 Barr, 325 ; Jennings v. Gratz, 3 Rawle, 169. In Cornelius v. Molloy, 7 Barr, 296, the defendant sold the plaintiff as copper a composition which was not copper, and was held liable in an action of deceit : Kirk v. Nice, 2 Watts, 369 ; Robertson v. Schwening, 1 W. N. C., 94 ; Wolcott v. Mount, 7 Vroom, 265 ; White v. Miller, 71 N. Y., 128 ; Allan v. Lake, 18 Q. B., 565. (2) A given kind of goods being insisted upon, the contract included an express warranty of quality : Boyd v. Wilson, 3 W. N. C., 524 ; Sims v. Stribler, 13 Id., 92 ; Warren v. Coal Co., 3 Id., 525 ; Driesbach v. Lewisburg Bridge Co., 32 P. F. S., 180 ; McGlinn v. Carrigan, 2 W. N. C., 323 ; Freiberg v. Kahn, 1 Id., 221. (3) The following cases are to be distinguished on plain grounds : (*a*) Those in which the defect was one of quality merely, the goods delivered being of the kind stipulated for : Wetherill v. Neilson, 8 Harris, 452 ; Whitaker v. Eastwick, 25 P. F. S., 231 ; Coulston v. City National Bank, 4 W. N. C., 297 ; Boyd v. Wilson, 3 Id., 524. (*b*) Those in which the actual goods bargained for were delivered, but the buyer was dissatisfied with them : MacFarland v. Newman, 9 Watts, 57 ; Carson v. Baillie, 7 Harris, 379 ; Lord v. Grow, 3 Wr., 88. (*c*) Those of a sale by inspection, where each party had an equal opportunity of ascertaining the kind and condition of the goods, and where the goods were not required by the contract to be a certain lot as in the principal case, but only to be those of a general kind or species : Lord v. Grow, *supra*. And as to this see Osgood v. Lewis, 2 Harris & Gill, 495 ; approved in Cornelius v. Molloy, 7 Barr, 296 ; *supra*, pp. 7, 8.

The present action is in case for the breach of a representation or condition of a contract, through which breach certain injury was suffered by the plaintiff. This is the older and probably the more scientific procedure : Vanleer v. Earle, 2 Casey, 279.

*Frank S. Simpson*, for defendant in error.—The plaintiff by

[Shisler *v.* Baxter.]

his own testimony bought and received exactly what he saw put out on the counter for him, with full opportunity for inspecting what he bought. There is no evidence that the defendants said anything which they believed was untrue, or intentionally made the slightest misrepresentation. The seed when sold was merchantable cabbage seed, even if it was not all " Wakefield " seed. To hold the defendant liable would make a merchant, without corresponding profit, an insurer of kind and quality, and in this case a guarantor of the most uncertain of all results—the product of seeds planted in the ground : Borrekins *v.* Bevan, 3 Rawle, 28 ; Carson *v.* Baillie, 7 Harris, 375 ; Lord *v.* Grow, 3 Wright, 88 ; Boyd *v.* Wilson, 2 Norris, 319 ; Selser *v.* Roberts, 9 Out., 242 ; Wetherill *v.* Neilson, 8 Harris, 448 ; Fraley *v.* Bispham, 10 Barr, 320 ; McFarland *v.* Newman, 9 Watts, 55 ; Jackson *v.* Wetherill, 7 S. & R., 480 ; Eagan *v.* Call, 10 Casey, 236 ; Weimer *v.* Clement, 1 Wright, 147 ; Whitaker *v.* Eastwick, 25 P. F. S., 229 ; Haddock *v.* Mayer, 38 Leg. Int., 311 ; Coulston *v.* Bank, 4 W. N. C., 297 ; Port Carbon Iron Co. *v.* Groves, 18 P. F. S., 149 ; Altoona Iron Works *v.* Axle Co., 6 W. N. C., 271 ; Roebling *v.* Brown, 9 Id., 170 ; Ryan *v.* Ulmer, 12 Out., 332. The narr. is framed as in an action for deceit : 2 Chitty, 680 ; Iron Works *v.* Barber, 13 W. N. C., 492 ; 6 Out., 156. The deceit or guilty knowledge on the part of the defendants is the gist of the whole action, and of course must be averred and proved ; Cox *v.* Highley, 4 Out., 249 ; Dilworth *v.* Bradner, 4 Norris, 238 ; Duff *v.* Williams, Id., 490.

Chief Justice MERCUR delivered the opinion of the court, April 13th, 1885.

In this case there is no evidence of any intended fraud or deceit by the vendor, nor of any express warranty. Mere representations as to the quality of the article sold do not constitute a warranty : Wetherill *v.* Neilson, 8 Harris, 448 ; nor in itself is it evidence of a warranty : McFarland *v.* Newman, 9 Watts, 55. Unless there be fraud or warranty the purchaser takes the risk of the quality : Whitaker *v.* Eastwick, 25 P. F. S., 229. So in a sale of personal property on inspection, and where the vendee's means of knowledge are equal to the vendor's, the law does not presume an engagement by the vendor that the thing sold is of the species or kind contemplated by the parties : Lord *v.* Grow, 3 Wright, 88. That case is very similar to the present. There the intention was to buy and to sell spring wheat, but the kind actually delivered turned out to be winter wheat. The purchaser claimed to recover on an implied warranty that the wheat sold was spring wheat, but this court held otherwise. Among the nu-

merous authorities leading to the same conclusion are : Fraley
*v.* Bispham, 10 Barr, 320 ; Selser et al. *v.* Roberts, 9 Out.,
242 ; Ryan *v.* Ulmer, 12 Out., 332.

In the present case the purchaser asked for the seed which
the vendors had kept over from the previous year. The lat-
ter thereupon laid out on the counter before the purchaser
some of the papers containing the seed. They were the iden-
tical packages remaining over from the previous year. Each
party had an equal opportunity of inspecting them.

Although the declaration charges a false and fraudulent sale
by the vendors, yet no evidence was given tending to prove
any fraud or intended deceit, nor is any averred here. They
sold it just as they had bought it, in entire good faith. The
vendee had just as much knowledge in regard to the kind and
quality of the seed as they had. In such case, in the absence
of express warranty, the exemption of liability of the vendors
is too well settled to need any further citation of authorities.

Judgment affirmed.