# Mahaffey, Appellant, *v.* Ferguson.

[Marked to be reported.]

*Sale of timber land—Warranty—Misrepresentations.*

Where a purchaser of standing timber goes upon the land and has an opportunity to see the timber, he will not be permitted to defend an action for the purchase money on the ground that he was deceived by the vendor's misrepresentations of the quality and quantity of the timber; nor, where it appears that he dealt with the vendor at arms length, will he be permitted to claim that such misrepresentations amounted to a warranty.

*Fraud—Rescission of contract.*

Where a sale is consummated by means of fraud, the vendee, upon the discovery of the fraud, has a right either to affirm or disaffirm the purchase. If the latter, it is his duty to do so promptly, when the parties can be restored to their original position. And whether they can be so restored is ordinarily a question for the jury.

Argued March 13, 1893.     Appeal, No. 93, July T., 1892, by plaintiff, David T. Mahaffey, from judgment of C. P. Lycom-

ing Co., Dec. T., 1889, No. 198, on verdict for defendant, P. J. Ferguson. Before GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Feigned issue to determine validity of judgment for purchase money for real estate.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

" [If you believe from the evidence that Mahaffey warranted to the Bittings, or the defendant, Ferguson, at the meeting on June 4, 1886, that the facts would be as Marsh would state them, and that Marsh did state to the Bittings that the lines and the timber over the whole tract were the same as he had formerly represented them to be on former occasions, then the Bittings were not bound to use further efforts, care or caution in examining and ascertaining the truth, but had a right to rely upon the representations of Marsh without looking further ; and if he made such warranties to Ferguson it would entitle him, Ferguson, to recover damages, if any—if you believe from the evidence that Marsh did make the representations attributed to him by the testimony of Ferguson, the Bittings and Colbert, in reference thereto. Even if the plaintiff, Mahaffey, did not say to the Bittings or to Ferguson that he would be responsible for all that Marsh said and did, he was holding him out as his agent in the matter ; and if, without notifying them not to trust Marsh, Marsh subsequently went with the Bittings upon this land, and guaranteed or warranted the lines, and reiterated the fact that the lines and the timber were just as he had formerly represented to them, and thus induced them to make no further investigation, and stop—if he did that as the agent of Mahaffey, Mahaffey would be liable, notwithstanding his evidence may be true that he never did so undertake to be responsible.] [1] . . . .

" [And with reference to these several points that we have mentioned, that the defendant would have a right to recoup and set off damages, it must not be forgotten that you must consider that at the time these representations were discovered to be untrue, so much had been done under the contract in reference to the subject-matter of it, that it was impossible to restore the parties to their former position.] [2]

" [If you believe the evidence on the part of the defence, that the tract as a whole was not so well timbered as Marsh, the vendor's agent, had represented it to be; that the three western tracks had not nearly so much prop timber per acre as was on an acre of the land shown; that on the whole tract there were but about 500 acres that came up in quantity and quality of timber to the specimen acres shown by Marsh to the agents of Ferguson, the defendant; if you are satisfied from the evidence in the case that this is true; that the tract as a whole was not so well timbered as Marsh represented it to be when he showed the land to the agents of Ferguson before the consummation of the bargain between the vendor and vendee, and the vendee was induced to make the purchase, which he otherwise would not have done, then the vendee is not bound to pay the whole of the stipulated price, but only such proportion thereof as the actual value of the whole tract at the time of the purchase bore to what the actual value of the whole would have been if the tract had been timbered as it was represented to be timbered, subject, of course, to the instructions relating to what was said on the 8th and 9th of June, as we have before stated.] [3] In other words, the difference, if any, between the actual value of the tract as a whole, and the value that the whole tract would have had if it had been timbered as represented to be, or alleged to be, on the 8th and 9th of June, is the measure of the vendee's loss by the fraud or the mistake of the vendor; and if that difference is a sum equal to or greater than the amount of the judgment in suit, then your verdict must be for the defendant; if it is less, then your verdict must be for the plaintiff for the balance remaining after deducting the defendant's loss and damage from the amount of the judgment.

" In arriving at the damage, if any, sustained by the defendant, you are not at liberty to find from the evidence the value per acre of the specimen of land shown and then multiply that value by the acreage of the tract, or to say that the whole tract would have been worth, if timbered as represented, as many times the value of the 160 acres as that body of land is contained in the whole tract. A large tract of woodland, even if every acre were timbered exactly alike, would not necessarily be worth the same price for each and every acre. The location and lay of the land, the degree of facility of access to the land,

the proximity of the land to market or the railroad, and other elements come in affecting and varying the price of the land per acre.   Then, where there is a variance in the kind of timber upon it, and in its quality and quantity, you must discover as best you can from the evidence, taking into consideration all the facts shown in regard to the natural situation of the land, the value of the whole tract conveyed as it actually was at the time of the purchase, and also estimate what would have been its actual value as a whole at the time of its purchase and conveyance by the plaintiff, if it had been so timbered as it was represented to the defendant to be.   Having done this, if you find any difference in these two valuations, that difference, as we have already stated, is the measure of defendant's damages, and if that damage equals or exceeds the amount claimed by the plaintiff in this action, the plaintiff cannot recover; but even if it greatly exceeds the sum claimed here, the defendant can recover nothing.   Whatever, if anything, he has already paid more than he ought to have paid, he has irrevocably lost; [the only question is whether he shall be compelled to pay more than he has already paid—whether in justice and right he ought to pay the full price stipulated in his contract, or whether, by reason of the fraud or the mistake or the warranty of the vendor (if you find there was fraud or mistake and a warranty of them), his vendee, the defendant, is entitled to a rebate off that price to the extent of his loss, under the rules of law which we have stated.] [4]   That is, he cannot recover anything of the portion paid, but can recover such damages as he proved that he really sustained, to the extent of the plaintiff's claim or less, just as you may find under the evidence.

"The evidence relating to the fact that Mahaffey's agent, Marsh, misrepresented the true lines and location of the land, and the kind, quality and quantity of the timber thereon, both before the meeting of June 4, 1886, and afterwards on the 8th and 9th days of June, in the same year, is not contradicted, and [if either Mahaffey or his agent, Marsh, warranted such representations in regard to the lines and timber to be true, then the defendant was excused from examining further on or after June 4, 1886, and if the defendant believed or relied upon such warranties, and closed up the contract because of said warranties, he may, if he choose, after the discovery of the

falsity of such warranties, hold the plaintiff in damages and set off the amount thereof against the amount of such bond and mortgage.] [5]

" [Even if you disbelieve the evidence of Abner Bitting and Charles Bitting, and find that Mahaffey did not direct and request the Bittings to go over the tract with Marsh—if you disbelieve them to that extent—after June 4, 1886, and did not warrant that whatever Marsh would say or do in reference to the lines would be true or he would stand the damages—unless you find that Mahaffey did not say to the Bittings that they should not take and rely upon Marsh's representations or warranty, and that they did not make Marsh their agent on those days, the 8th and the 9th of June, and you believe the uncontradicted evidence of James Colbert, Charles Bitting and Abner Bitting, who were with Marsh and over the lands on the 8th and 9th days of June, 1886, and testify that he showed them the same corners and lines and made the same representations in regard to the timber over the whole tract that he had showed and made before, and said the lines and corners were the true and correct ones, that he must be careful to get the right lines ; he wanted to be sure of it because Mahaffey said he would be responsible for all damages, and that these declarations would warrant the corners and lines and kind and quantity of timber represented to be within them, and that defendant relied upon them as made by the agent of the plaintiff, and became the cause of defendant's closing out the contract, then Mahaffey would be bound by them, and defendant would be entitled to set off the damages sustained by reason of the falsity of the representations.] [6] . . . .

" [As to what constitutes a warranty, we instruct you that it is not necessary that the word ' warranty,' or any other particular words or form of expression should be used in order to create a warranty. If the representation was positive and related to a matter of fact and not to a mere matter of opinion, and the other party received the statement as true and relied upon it and advised and caused Ferguson to close out the purchase and part with his money on the strength of it, such representations will constitute a warranty.] [7]

" Now, gentlemen, under the evidence in this case, and the instructions which we have given you, you must decide how

this matter was between the parties. As to the question of damages, we have already given you the rule that the measure of damages is : ' What was the actual market value of the property at the time the defendant got it, and what should it have been as represented,' provided you find those representations to be binding between the parties, under the instructions which we have laid down to you. Now, what is the evidence upon that subject? Abner Bitting estimates the damages at $4,090. That is the difference between the value of the land as it was and its value as it was represented to be. A purchaser is entitled to the benefit of a bargain. We ruled out the evidence, and we say to you that you cannot consider the relative value of any of the 160 acre portion which was not included in the survey of these several tracts of land (not included within the true lines) ; you cannot consider that estimate of relative value as compared with the price fixed between these parties, because a purchaser sometimes gets a good bargain ; he buys a property for much less than its value ; if he did not, he could not afford to pay agents, or give the matter personal attention himself ; [and as we view this case, this purchaser was entitled to that land as it was represented to be timbered and located, and if it was not as represented to be, even if those representations were honestly made, he is entitled to the difference between its value as represented and its actual value as it was.] " [8]

Plaintiff's points were among others as follows :

" 7. If the jury believe that on June 4, 1886, when the question was raised as to the location of the lines, Mahaffey said to Abner Bitting, as agent for Ferguson, that he did not desire to close the matter until Ferguson was entirely satisfied as to the location of said lines, and requested him to procure some disinterested competent surveyor to run them and ascertain the true location of the lines in dispute, then it became the duty of Ferguson, having such knowledge and notice, so to do, and failing to thus make the survey which would have brought to him actual knowledge of the requisite fact, he cannot now, after execution and delivery of the deed, bond and mortgage, set off any claim for damages from the amount of the judgment, on account of any alleged untrue location of the lines. *Answer:* This point is correct and affirmed, unless the plaintiff's agent,

Marsh, prevented it on warranty of his previous representations to be true." [9]

" 9. That P. J. Ferguson, the defendant, cannot resist the right of D. T. Mahaffey, the plaintiff, to recover in this action on the ground of a failure of title to a portion of the land, or for any deficiency of timber on the three western tracts, for the reason that he has disabled himself from placing D. T. Mahaffey, his vendor, in statu quo, by stripping the timber from the land, and that, too, after actual notice and knowledge that the disputed strip was not embraced in the conveyance from Mahaffey, and with notice of an alleged deficiency in the timber on the three western tracts; this notice and knowledge having come to Ferguson prior to the cutting of any timber by him or his agents on the lands covered by the conveyance from Mahaffey." Refused. [10]

" 10. If the jury believe that the means of knowledge and opportunity of ascertaining both the quantity and the kind of timber on any and all of these tracts and the location thereof were equally available to both parties, and the subject of the purchase was alike open to their inspection, and if the defendant, Ferguson, or his agents, the Bittings, did not avail themselves of these means and opportunities, he cannot now be heard to say that he was deceived by any alleged misrepresentations of Marsh, as the agent of Mahaffey, as to the quantity, quality or locality of the timber on any of the said tracts of land.  *Answer :* This point is affirmed with the condition that if Mahaffey or his agent, Marsh, warranted facts or representations to be true which were false, or Marsh, as his agent, by artifice, acts or persuasion prevented such investigation or examination, then the point is not correct.  These are questions for the jury." [11]

Defendant's point among others was as follows :

" 4. If the jury believe from the evidence that the defendant has sustained damages to an amount equal to or in excess of the plaintiff's demand in this suit, the verdict of the jury should be for the defendant." Affirmed. [12]

Verdict and judgment for defendant.  Plaintiff appealed.

*Errors assigned* were (1–12) instructions, quoting them; (13) that there was a tendency to mislead and confuse the jury in the general charge of the court to the prejudice of the plaintiff.

*Addison Candor* and *B. S. Bentley, C. LaRue Munson* with them, for appellant.—There was no evidence of a warranty in this case. It is error to submit a material question to the jury upon which there is no evidence whatsoever. Mere misrepresentations do not amount to a warranty: Slaughter v. Gerson, 13 Wal. 379; Farnsworth v. Duffner, 142 U. S. 43; Simmons Creek Coal Co. v. Doran, 142 U. S. 417; Fisher v. Worrall, 5 W. & S. 484; Jackson v. Wetherill, 7 S. & R. 480; McFarland v. Newman, 9 Watts, 55; Wetherill v. Neilson, 20 Pa. 448; Shisler v. Baxter, 109 Pa. 443.

The court took from the jury entirely the consideration of a question of fact, which he had previously set forth as being vital to the case. By the language used he said in effect to the jury that at the time Ferguson discovered the representations made by Marsh to be untrue, so much had been done under the contract that it was impossible to restore the parties to their former position: Collins v. Leafey, 124 Pa. 203; Madara v. Eversole, 62 Pa. 160; Bergner v. Thompson, 74 Pa. 168; McClurkan v. Byers, 74 Pa. 405; Oram v. Rothermel, 98 Pa. 300.

The means of knowledge were at hand and equally available to both parties, and the subject of purchase was alike open to their inspection; more than that, the defendant, by his agents, had gone upon the land at various times for the express purpose of inspection; and not only that, but on several occasions had taken with them persons experienced in matters of this kind for the same examination, and yet the court said to the jury that, notwithstanding all these facts and circumstances, the mere fact that Marsh made a representation of itself constituted a warranty. It is respectfully submitted that this did not constitute a warranty: Veasey v. Doton, 3 Allen (Mass.) 380; Smith v. Richards, 13 Peters, 26.

Whatever puts a party on inquiry amounts to notice, provided the inquiry becomes a duty, as it always is with a purchaser, and would lead to the discovery of the requisite fact by the exercise of ordinary diligence and understanding: Hill v. Epley, 31 Pa. 336. This principle is also supported in Jaques v. Weeks, 7 Watts, 267; Hood v. Fahnestock, 1 Pa. 474; Maul v. Rider, 59 Pa. 167; Lodge v. Simonton, 2 P. & W. 439; Ogden v. Porterfield, 34 Pa. 197; Hershey v. Keembortz, 6 Pa. 128; Rodgers v. Olshoffsky, 110 Pa. 147.

Even though the contract was void, and not simply voidable, on account of the alleged fraud practiced upon Ferguson, still Ferguson could ratify and confirm such contract without a new contract founded on a new consideration. Having knowledge of the alleged discrepancy in lines and deficiency in timber, and that the same was not as claimed to be represented, and having, after the acquiring of such knowledge, gone to work upon the land as the owner of it, cutting and stripping the timber therefrom, he thereby treated this sale as valid and binding, and it is submitted that he could not thereafter repudiate the contract in whole or in part: Negley v. Lindsay, 67 Pa. 217 ; Vigers v. Pike, 8 Cl. & Fin. 562 ; Dennis v. Jones, 44 N. J. Eq. 513 ; Campbell v. Fleming, 1 Ad. & Ellis, 40.

If the language of the court, taken in connection with the circumstances of the case, may have misled the jury, it is error: Kissinger v. Thompson, 12 S. & R. 44; Hersheaur v. Hocker, 9 Watts, 455 ; Relf v. Rapp, 3 W. & S. 21 ; Wenger v. Barnhart, 55 Pa. 300 ; Gregg Township v. Jamison, 55 Pa. 468 ; P. R. R. v. Berry, 68 Pa. 272 ; Stall v. Meek, 70 Pa. 181 ; P. W. & B. R. R. v. Alvord, 128 Pa. 42; Washington Mutual Fire Ins. Co. v. Rosenberger, 3 W. N. 16 ; Skinner v. McAllister, 4 Cent. R. 750 ; s. c., 6 Atl. R. 120.

*Henry C. Parsons* and *S. G. M. Hollopeter, A. F. Ryon* with them, for appellee.—The fourth, fifth and eighth assignments are not to paragraphs in the charge but commence in the middle of a sentence. This is manifestly unfair to the court below, and has a direct tendency to mislead this court: Knapp v. Griffin, 140 Pa. 616 ; Carothers v. Dunning, 3 S. & R. 373 ; Schuylkill Navigation Co. v. French, 2 W. N. 718.

Defendant had a right to rely upon the misrepresentations made to him.

The case of Slaughter v. Gerson, 13 Wallace, 379, was in relation to the sale of a steamboat, and the purchaser, with two ship carpenters, had examined the boat before the purchase was made, and the court held that, after such an examination of personal property, the vendee could not complain of false representations by the vendor.

The case of Farnsworth v. Duffner, 142 U. S. 43, was a case of the sale of land, where the title proved defective. The evi-

dence was, that the purchaser had the title examined by his own counsel, who advised him that it was good and that he should accept the deed. The court held that he could not rescind the contract.

The case of Fisher v. Worrall, 5 W. & S. 484, is also cited. The counsel for appellant have quoted just one half of one sentence in the opinion of Chief Justice GIBSON. The case is decisive against the appellant here.

When the vendor of timber, before entering into a contract of sale, pointed out to the vendee certain lines on the ground, representing that they were the lines specified in his title deed, the representation being material and the sale being founded on it, the fact that it was honestly made will not enable the vendor to profit by it, if untrue : Blygh v. Samson, 137 Pa. 368 ; Tyson v. Passmore, 2 Pa. 122.

The consequences of an innocent misrepresentation, if there can be such a thing, must fall on him who was the author of it, on the principle that the acts, even of an innocent man, shall prejudice himself rather than a stranger equally innocent : Tyson v. Passmore, 2 Pa. 124.

Detached portions of the charge of the court, and especially only part of a sentence, should not be assigned for error. They should be read in their construction with other parts of the charge and with the charge as a whole. If the charge as a whole is a correct and adequate presentation of the case to the jury, it will be affirmed : Lehigh Valley R. R. v. Brandtmaier, 113 Pa. 619 ; Reeves v. Delaware, Lackawanna & Western R. R., 30 Pa. 460.

OPINION BY MR. JUSTICE THOMPSON, July 19, 1893 :

On May 11, 1886, the appellant being the owner of seven tracts of timber land containing about 2,800 acres, entered into an agreement with the appellee for their sale for the sum of $10,900. Before this agreement was made, the agents of the appellee with the agent of the appellant visited the lands on several occasions for the purpose of examining them with a view to their purchase for the prop timber upon them. The result of these examinations was this agreement for their purchase. On June 4, 1886, a meeting took place at Lock Haven for the purpose of consummating the sale by the execution of the deed

and the bonds and mortgage to secure the deferred payments. Previous to this meeting, appellee's agents received information that led them to be suspicious about the representations made by appellant's agent as to the boundary line of the tracts, and they declined to proceed with the transaction until further examination. Accordingly the agents of both parties made a visit for the purpose of examining the lands, and after this visit the appellee through his agents concluded to close the purchase. Upon April 14, 1886, accordingly, the appellant executed a deed for the land and the appellee three judgment bonds and a mortgage to secure the same for three deferred payments of $2,030 each. The appellee went into possession and proceeded to cut the timber from the lands, and has continued to do so. The appellee paid the first two deferred payments as they became due, but refused to pay the third. In consequence of which the appellant entered judgment upon the bond given for it and issued execution. The appellee then filed his petition, alleging that the agent of the appellant had induced him to purchase the lands by pointing out certain lines as the true boundary line of them, that such lines were not the true boundary lines but were outside of the lands, and that the lands embraced between them and the true lines contained the most valuable prop timber, which induced him to purchase ; that in pointing out these false lines the agent of appellant perpetrated upon appellee " a premeditated, willful and malicious fraud." He claimed : " That by reason of the premeditated, willful and malicious fraud aforesaid he suffered damage to the amount of $3,000, and prayed for equitable relief." Upon this application the judgment was opened and an issue framed. This issue was to determine whether there was a fraud perpetrated by the appellant through the representations made by his agent as to the lines of the land, and if so, the amount of damage done to appellee to be a set-off against the claim of appellant. This issue under the petition was as to the fraudulent and malicious representations in regard to the boundary lines and related to nothing else. Its purpose was to satisfy the conscience of the chancellor as to whether fraud in this regard had been perpetrated upon appellee when he made the purchase. It appears by the proofs that there were misrepresentations as to these lines, by reason of which appellee failed to get about 160 acres of valuable prop

timber land which were pointed out as within the lines of his purchase.  It is clear that the appellee is entitled to a set-off to the extent of the damage thus done by such misrepresentations, but on the trial the appellee claimed as a set-off additional dam ages by reason of the false and fraudulent misrepresentations as to the amount of prop timber upon the western tracts purchased by him.  As the set-off is practically in the nature of an action on the case for deceit, the appellee is entitled to such damages as result from the deceit or fraud effected by the false and fraudulent misrepresentations of appellee through his agent. The learned trial judge, in his charge, in addition to the question of fraud and deceit, submitted to the jury one as to a warranty of the amount of the timber upon these western tracts. He said: " If you believe from the evidence that Mahaffey (appellant) warranted to the Bittings, or the defendant Ferguson at the meeting on June 4, 1886, that the facts would be as Marsh would state them, and that Marsh did state to the Bittings that the lines and timber over the whole tract were the same as he had formerly represented them to be on former occasions, that the Bittings were not bound to use further efforts, care or caution in examining and ascertaining the truth, but had a right to rely upon the representations of Marsh without looking further; and if he made such warranties to Ferguson it would entitle him (Ferguson) to recover damages." Prior to the meeting on June 4, 1886, the appellee's agents had gone to the lands for their examination and were satisfied with the result of the same, but at the date of the meeting, because of a suspicion suggested as to Marsh, a doubt arose as to the boundary lines of these lands.  Charles Bitting testified that appellant " said, if that was all the trouble, he could fix it up satisfactorily, and he authorized Marsh to go over them again and examine it carefully, and whatever Marsh would show or' represent he would stand for all damages." There is no evidence of any warranty made June 4, 1886, as to these western tracts.  The only question then arising was in regard to the lines, and if it be true that appellant had authorized Marsh to go upon the tracts he did so for the purpose of pointing out their boundary lines, and nothing more.  Several trips were made to them by the appellee's agents.  They had their eyes open, and their understandings were doubtless upon the alert.

The lands were pointed out to them, they saw them, and they were satisfied with them, as to the character and extent of the prop timber upon them. Thus, on June 4th, no warranty was intended or contemplated as to these western tracts, and the only doubt was as to the lines pointed out. There is no evidence of any warranty made on June 4th, and as there was none it was error to submit it to the jury.

There was no warranty as to the amount of timber on these tracts made on that day, and none prior thereto. Appellee's agents were looking for prop timber and met Marsh, who said to them that he had these lands belonging to appellant for sale. He went with them in April, 1886, upon an adjoining tract, and pointed them out to them. He said: "Here is a nice lot of prop timber upon James W., Charles McMackin, and George tract." "All you see there is prop timber, yellow and jack pine." A week later these agents, with an expert, J. R. Thorn, went with Marsh to visit them for the purpose of further examination. Marsh again pointed out the lines and said: "There was a nice lot of prop timber on them tracts. That was all yellow and jack timber, that we could see from the front." Shortly after this Charles Bitting, Ross Thorn, and Marsh went again to look at these lands, and Marsh pointed out the lines and subsequently, after June 4th, these agents, with Colbert, an expert, and Marsh went again to examine them, and Marsh said there was considerable timber upon those tracts. Bitting himself testified that "We could see there was green timber on these tracts, and he said they were yellow and jack pine." On this occasion they did not continue their examination on account of rain. The appellee dealt with the appellant at arms length, and the opportunity to investigate was open to his agents. If their examination was incomplete, it was their error. If they chose to rely upon an imperfect investigation because of rain, it was their mistake. If before the completion of the sale they were advised as to the tricky character of appellant's agent, and with their suspicions thus aroused they chose not to investigate fully, it was their fault. The repeated examinations, the employment of experts, the suspicions, the refusal to complete the sale, because of the lines, show clearly there was no warranty made or intended, and that the parties dealt with each other with their eyes open, and at arms length,

and representations made under these circumstances did not constitute a warranty.

In Veasey v. Doton, 3 Allen (Mass.), 380, it is said : " The plaintiff had no right to rely on the representation of value as a fact, nor to place any confidence or trust in it. Such representation, however exaggerated, false and deceptive it may be, is not actionable, if the subject of the sale be open to the buyer's observation. He is bound to examine or inquire for himself and trust his own judgment, or take a warranty from the seller."

In Smith v. Richards, 13 Peters, 42, it is said: " We think we may safely lay down this principle that wherever a sale is made of property not present, but at a remote distance, which the seller knows the purchaser has never seen, but which he buys upon the representation of the seller, relying upon its truth, then the representation in effect amounts to a warranty, at least, that the seller is bound to make good the representation. No part of the reasoning of the cases which we have been reviewing applies to such a case ; they proceed upon the idea that, where the subject of the sale is open to the inspection and examination of the buyer, it is his own folly and negligence not to examine. Chancellor KENT, in the second volume of his Commentaries, 484, 485, has justly said that the law does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information."

In Slaughter v. Gerson, 13 Wallace, 383, it is said: " A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by over confidence in the statements of another."

In Farnsworth v. Duffner, 142 U. S. 47, it is said: "This is a suit for the rescission of a contract of purchase and to recover the moneys paid thereon, on the ground that it was induced by the false and fraudulent representations of the vendors. In respect to such an action it has been laid down by many authorities that, where the means of knowledge' respecting the matters falsely represented are equally open to purchaser and vendor, the former is charged with knowledge of all that by the use of such means he could have ascertained."

In Shisler v. Baxter, 109 Pa. 443, it is said : "Mere representations as to the quality of the article sold do not constitute a warranty : Wetherill v. Neilson, 8 Harris, 448. Nor in itself is it evidence of a warranty : McFarland v. Newman, 9 Watts, 55. Unless there be fraud or warranty the purchaser takes the risk of the quality : Whitaker v. Eastwick, 25 P. F. S. 229. So in a sale of personal property on inspection, and where the vendee's means of knowledge are equal to the vendor's, the law does not presume an engagement by the vendor that the thing sold is of the species or kind contemplated by the parties : Lord v. Grow, 3 Wright, 88."

In Wetherill v. Neilson, 20 Pa. 453, it is said: "If mere representations were to be treated as part of this contract, it is not easy to see why they should not be so as to all other contracts. And if they were, then the law would foster a spirit of litigation by encouraging every man who is disappointed in the advantages expected from a bargain to drown his sorrows in the excitement of an action at law. The law repairs broken contracts, but it does not attempt to satisfy mere expectations."

As the appellee through his agents dealt with the appellant through his agent upon equal terms, and as there was no warranty as the basis of the sale, the learned judge erred in charging: "The only question is whether he shall be compelled to pay more than he has already paid—whether in justice and right he ought to pay the full price stipulated in his contract, or whether, by reason of the fraud or the mistake or the warranty of the vendor (if you find there was fraud or mistake and a warranty of them), his vendee, the defendant, is entitled to a rebate off that price to the extent of his loss, under the rules of law which we have stated." Again : "And as we view this case this purchaser was entitled to that land as it was repre-

sented to be timbered and located and if it was not as represented to be, even if those representations were honestly made, he is entitled to the difference between its value as represented and its actual value as it was." The vice of these rulings is the union of fraud and warranty. The issue in this case was not one relating to a warranty, but was whether a premeditated and willful fraud had been perpetrated by the appellant through his agents by the false and fraudulent representations of material facts, by which he had induced appellee to make the purchase. If the fraud alleged was consummated, the appellee upon its discovery had a right either to affirm or disaffirm the purchase. If the latter, it was his duty to do so promptly when the parties could be restored to their original position. Negley v. Lindsay, 67 Pa. 217.

As soon as the appellee discovered the fraud, if he intended to disaffirm the purchase he should have done so, if the parties could then be restored to their original position; and whether they could be so restored was a question for the jury. The learned judge however says: " And with reference to these several points that we have mentioned, that the defendant would have a right to recoup and set off damages, it must not be forgotten that you must consider that, at the time these representations were discovered to be untrue, so much had been done under the contract in reference to the subject-matter of it, that it was impossible to restore the parties to their former position." This language clearly imports that so much had been done then that the original positions of the parties could not be restored. Thus the learned judge took this question from the jury, and as the facts were disputed the question was for the jury, and should have been submitted to them.

For these reasons the judgment is reversed and a venire facias de novo is awarded.