# Wigton & Brooks's Appeal.

The lien of mechanics and material-men attaches to the building primarily, and to the land only incidentally, as necessary to the proper use and enjoyment of the building.

When the building ceases to exist, by having been destroyed by fire, or other accident, the lien is gone. *A fortiori* is this the case where such destruction precedes the entry of the lien. See Presbyterian Church *v.* Stetler, 2 *Casey* 266.

In such case, the lien will not attach to the materials left remaining after the destruction of the building; nor to buildings erected as appurtenances to the main structure.

APPEAL from the decree of the Common Pleas of *Bucks county*, distributing the proceeds of the sale of the real estate of William Beek. The property sold consisted of twenty-five acres of land, situate in Doylestown township. About the 1st of April, 1855, Beek commenced the erection of a large building forty feet high, two hundred and fifty feet long, with two wings of fifty feet square each, on the same land, the buildings and grounds being designed for holding agricultural and other public exhibitions. The grounds were graded and enclosed with a high, tight board fence, with entrances and ticket offices. Stalls and pens for cattle, &c., extended around the greater part of the enclosure. There were gas works erected in a separate building, for the purpose of lighting the main structure. The principal building was so far completed, that an exhibition, commencing 21st August, and continuing four days, was held in it and on the grounds.

After the commencement of the buildings, The Doylestown Bank, and various other parties, recovered judgments against Beek, the owner of the premises.

On the 28th of October, 1855, the main building was prostrated by a storm. The foundation walls were left entire, and so was the floor with the exception of some holes broken through it by the falling timbers. The other improvements remained unaffected. Subsequent to this, Wigton & Brooks, with a number of others, filed liens for work and labour done and performed, and for materials furnished about the erection of the building and other improvements.

On the 22d of March, 1856, the property was sold under a *venditioni exponas*, issued upon one of the judgments, subject to a first mortgage of $2800, and the proceeds of that sale, $5855.49, were in court for distribution.

The court appointed M. Yardley, Esq., an auditor to report the facts and make distribution. Before the auditor the fund was claimed by the appellants, on their mechanic's liens filed, and by

[Wigton & Brooks's Appeal.]

the judgment-creditors. The auditor decided that the appellant's liens were lost by the destruction of the building, and reported in favour of awarding the fund to the judgment-creditors. To this report exceptions were filed; but the court below (SMYSER, P. J.) dismissed the exceptions, and, delivering the following opinion, decreed distribution according to the auditor's report.

" The lien of mechanics and material-men attaches to the building primarily, and to the land only incidentally, as necessary to the proper use and enjoyment of the building. If no building is erected, there is no lien on the material, merely as such; and, on the other hand, if the latter is furnished on the credit and for the use of the former, the lien exists, whether the material is actually put into the building or not. It follows, therefore, that when the building ceases to exist, by its being destroyed by fire or any other accident, the lien, having no longer anything to attach itself to, or in which it can inhere, is gone. *A fortiori* is this the case when such destruction precedes the filing and entry thereof.

" These principles are definitely asserted and settled in the case of The Presbyterian Church *v.* Stetler, 2 *Casey* 246. The only question that seems to be left for the consideration of the court, is, whether in this instance there has been a total destruction of the building as such. This, the facts found by the auditor, and the evidence returned, fully establish; and our personal knowledge, drawn from a view of the wreck, if we were at liberty to be governed by that, most entirely justifies and sustains them. There is nothing left to repair; if reconstructed, it would be an entirely new erection, with the exception, perhaps, of the foundations and part of the flooring. It is sufficiently manifest that nothing of the kind was contemplated by the former owner or contractor. What the sheriff's vendees may intend, we have, of course, no means of ascertaining. But, were such a thing to be done, the labour and materials employed therein would be the foundation of new and independent liens, which would be almost valueless, if the old original liens are to be considered as attaching to the new structure.

" Neither can this class of claimants be suffered to take out of the fund in court, a sum equivalent to the value of the materials remaining on the ground, after the overthrow of the building. Being resolved into its original elements again, the case is, for the purposes of lien, as though there had never been a building erected out of them. They are there, but they are not in any structure. There is none in existence, for which, or on the credit of which, they were furnished. The lien attaches to the building, and not to the material, merely as such; and here there is now material only.

" It is not like the case mentioned in 12 *Harris* 507, of a building partially or wholly taken down by the contractor, to correct a

faulty construction. There, all that is done, may well be regarded as part and parcel of the original construction itself. It is in no sense, either a new building, or the repair of a former one.

"The stalls, ticket offices, gasometer and shed over it, are the mere appurtenances of the main building; and these liens are not filed specifically against them; nor, I imagine, could they have been. As incidents they follow the fate of their principal. In some of the claims filed, these outside erections are not named at all. In others, they are merely referred to in general terms, as appurtenances pertaining to the convenient use of the main building, which alone is described in the manner required by law. It cannot be successfully pretended that a lien can continue to attach to a mere appurtenance, after it has ceased to bind that to which the latter was appurtenant. These claims only purport to bind the sheds, fences, &c., as appurtenances to the building. That being destroyed, they cease to be appurtenant. It cannot be claimed, that, although no longer bound as appurtenances, they may be as separate or independent structures, for in that point of view, the liens filed are wholly worthless, for want of necessary and legal description.

"Whatever we may think of the hardship of the case of this class of creditors, we must not forget that they are clothed with special privileges and preferences, to the destruction of that equality in which equity delights; and that, not so much on the ground of their being a more meritorious class, as because the growth and improvement of the country is supposed to be promoted thereby. Being a privileged class, they may be entitled to a liberal construction of the law in their favour, especially in matters of form or mere technicalities; but although entitled to a liberal, they have no right to a latitudinarian construction, embracing matters neither within the letter or the spirit of the law. In an absolute sense, it is just as hard for the creditor, who advances the funds for the erection of the building, to lose his money, as for the man who puts into it his labour or material, and, apart from positive law, he has an equal right to repayment. If postponed on principles of public policy, the preference should cease when the policy ceases. Now where a building is blown down or destroyed, the policy, from that moment, is the other way; for, if the original claims still remained liens on the reconstructed building, then, so far as improvement depends on privileged liens, it would be arrested or greatly impeded, instead of being promoted.

"These being the views of the court, we have no alternative but to confirm the report of the auditor, and to decree distribution of the fund in court to and amongst the judgment-creditors, according to schedule or statement 'A' accompanying the report.

"Decree accordingly. By the court, Dec. 2d, 1856."

[Wigton & Brooks's Appeal.]

From this decree Wigton & Brooks and the other mechanic's lien creditors appealed, and assigned here for error:—

1. The court erred in decreeing distribution of the fund to the judgment, in preference to the mechanic's lien creditors.

2. The court. erred in refusing to appropriate any part of the fund to the liens filed by the appellants respectively.

*Boyd, Dubois,* and *Watson,* for appellants.—This case is different from that of The Presbyterian Church *v.* Stetler, 2 *Casey* 246; there, there was a complete destruction of the building; here, the foundations, flooring, and materials of the superstructure remain. There, there might be a contest between a first and second class of lien creditors; here, the liens are discharged by the sheriff's sale.

In Odd Fellows' Hall *v.* Masser, 12 *Harris* 507, it was held, the lien continued although the building was taken down and reconstructed.

It is conceived, that the fact of the building being blown down, before the *filing* of the lien, can make no difference—the filing does not create, but merely perpetuates the lien, which binds not only the building, but also the grounds adjacent, and necessary to the enjoyment thereof. When would the lien upon the ground be so fixed, that the destruction of the building would not divest it, or is it liable to be so defeated at any time before the actual collection of the money? Such a construction would greatly lessen the confidence of mechanics in their security, and would in a measure defeat the purposes of the law.

The question here is, shall the fund in court go to the judgment-creditors, or to the mechanics and material-men, the product of whose labour, and whose materials, are yet on the ground, and went to swell the amount for which the property was sold.

The main building, it is true, was blown down, but the foundations and floors were left almost entire. The wreck itself was worth over $1000—the gas works, the offices, fences, stalls, and all other improvements, worth a much larger amount, were left standing and uninjured. The appellants advanced their materials and labour, not on the security of the main building alone, but on that of the whole property and improvements, every part of which was necessary to the enjoyment of the principal structure. The ground itself was not worth much more than the mortgage upon it; while the value of the materials remaining is nearly as much as the fund in court.

Equity would direct, that the appellants, if not entitled to the whole fund, should at least be allowed what the materials and improvements remaining on the property are worth. Should the court be of this opinion, we ask that the matter may be referred back to the auditor to determine the proportion.

*Hart*, *Carver*, and *Lear*, for appellees.

The opinion of the court was delivered by

LEWIS, C. J.—This case falls within the principle settled in the Presbyterian Church *v.* Stetler, 2 *Casey* 246. The decree of the Court of Common Pleas of Bucks county is affirmed for the reasons given by the learned president of that court.

Decree of distribution affirmed.