See next preceding case.

---

### George W. Montgomery & George T. Montgomery, Partners, under the firm of Montgomery & Company, *v.* Keystone Fibre Company.

*Mechanic's lien—Manufacturing plant—Destruction of buildings—Loss of lien.*

A mechanic's lien upon a whole manufacturing plant for material furnished for the construction of two buildings constituting such plant, designated by an adequate and specific description of such buildings and curtilages, is not lost by the destruction of one of said buildings for which said material was furnished.

A material man furnished material to be used in the construction of two buildings forming a manufacturing plant. The lien was filed against the company owning the plant and "against the said buildings described as follows, viz : The first a two story brick, intended for the manufacture of wood-fibre ware, main building 178 ft. long 42.8 ft. wide and wing attached 178 ft. long and 20 ft. wide ; the second is a one story frame building, intended for a store house, 105 ft. long and 45 ft. wide. Situate, etc., and the whole tract of land upon which said buildings are situate." *Held,* that the description of the property was a sufficient compliance with the act of assembly in furnishing " such other matter of description as shall be sufficient to identify it."

Argued Jan. 14, 1896. Appeal, No. 6, Jan. T., 1896, by the East Stroudsburg Lumber Co., Ltd., from decree of C. P. Monroe Co., May T., 1894, No. 188, dismissing exceptions of appellant to auditor's report in the matter of the distribution of the fund in said court, arising from sheriff's sale of the real estate of the Keystone Fibre Co. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Exceptions to auditor's report in distribution of fund from sheriff's sale disallowing appellant's claim for $586.09.

It appeared from the auditor's report that the Keystone Fibre Co. acquired title to certain real estate on January 27, 1894; on the same day a mortgage was created to Robert W. Reynolds, trustee, for $12,000. This mortgage was for the real estate above mentioned and was duly recorded on the same day. On July 28th, 1894, appellant filed a mechanic's lien against two buildings, describing them separately as part of a plant. (The description from said lien being fully set out in the opinion of the Superior Court.) Judgment was obtained on the lien, execution issued thereon and the premises levied upon. Pending the levy one of the buildings constituting the plant was destroyed by fire. It also appeared that the lien was filed for work done and material furnished between August 7, 1893, and February 27, 1894, during which time the title to the property was held by a trustee pending the incorporation of the defendant company. The property was subsequently sold at sheriff's sale, discharged of the lien of the mortgage, for $5,500, and the auditor appointed to distribute the fund awarded the fund on account of the first mortgage, to the exclusion of the mechanic's claim of appellant. In this report the auditor found inter alia as follows:

A more important question arises concerning this lien. How was it affected by the fire that occurred November 23, 1894, by which the main building or manufactory of the Keystone Fibre Company was destroyed? It is admitted that if the lien had been restricted to the main building, its destruction would have destroyed the lien.

But it is contended that the lien also covered the frame building described therein, and that the lien was not impaired by the destruction of the main building.

The lien filed, describes the buildings as follows: " The first one is a two-story brick, intended for the manufacture of wood fibre ware—main building 178 feet long and 48.8 feet wide, and wing attached 178 feet long and 20 feet wide. The second one is a one story frame building, intended for a store house, 105 feet long and 45 wide."

The evidence shows that the frame building described in the lien was a part of the old skating rink, and had been removed to its present location, prior to the erection of the main or brick building, and an addition built to it $45 \times 45$, and that some of

the materials furnished by the East Stroudsburg Lumber Company went into the addition and some into the old part. The frame building was located about 38 feet from the brick building, and the buildings were connected by a temporary shoot, for carrying the manufactured ware from the main building to the frame building, called by the witnesses a storage house.

The lien was not apportioned, and the evidence shows that the East Stroudsburg Lumber Company furnished materials, to the amount of $200, for the storage building.

The auditor has made an extended research as to the effect of the demolition of buildings, upon mechanic's and material men's claims, and as to questions of apportionment and distribution, and from all the authorities consulted, and upon a careful review of all the facts elicited by the testimony, your auditor concludes, that he must regard the said lien as an entirety, that he cannot do what the claimant failed to do, to wit: to apportion the claim, if this claimant had a right to do so, which is questionable, as the lien was in fact entire against the main building or manufactory and its appurtenances, known as the plant of the Keystone Fibre Company.

The auditor holds that the storage house was appurtenant to the main building, and as was said by the court in Wigton & Brook's Appeal, 28 Pa. 163, "It cannot be successfully pretended that a lien can continue to attach to a mere appurtenance, after it has ceased to bind that to which the latter was appurtenant." Incidents follow the fate of their principal. Holding these views the auditor deems it to be his duty to disallow the said material man's claim upon the fund in court. If the auditor has erred in his conclusion the error will be corrected by the court.

Exceptions to the auditor's report were filed as follows:

1. The auditor erred in his conclusion of facts, under the evidence, that the defendant's storage house not destroyed by the fire of November 23, 1894, which destroyed its brick building, was only an appurtenance to the burnt building, because the lien filed in this case negatives any such conclusion, and the evidence does not uphold the conclusion. [1]

2. The auditor erred in reporting it as a fact that "as the lien was in fact entire against the main building or manufactory and its appurtenances, known as the plant of the Keystone

Fibre Company," for the reason that that assumption of fact is unsupported by evidence. [2]

3. The auditor erred in his conclusion of law that the fact of the destruction, by fire, of the defendant's brick building divested the exceptant's lien on the saved frame building, as it is not the law that where a lien is filed describing all the structures on a designated lot of ground, that the destruction of one or more of them is fatal to the life of the lien on the others. [3]

4. The auditor erred in distributing the entire fund in court to R. W. Reynolds, mortgagee and trustee, without proof that the loss payable to him under the fire insurance policies on the burnt building is inadequate for the discharge of the mortgage debt, or what the deficit, if any, from that source is. [4]

5. That the auditor therefore erred in not distributing the sum of $586.09, with interest from February 27, 1894, to the exceptant. [5]

Exceptions to the auditor's report were dismissed by the court below and the report confirmed.

*Errors assigned*, were (1–5) dismissing appellant's exceptions, reciting them.

*Henry J. Kotz, A. R. Brittain* with him, for appellant.—If these two buildings were parts of one plant, as the auditor considers them, and both designed for a common purpose, or considered as erected as parts of one tenement, they are subject to one joint lien and not to apportioned ones: Nelson v. Campbell, 28 Pa. 156; Parrish and Hazzard's Appeal, 83 Pa. 111.   Other cases relied upon as sufficient answers in law to the objection to the nonapportionment of the lien of the appellant are: Driesbach v. Keller, 2 Pa. 79; Lauman's Appeal, 8 Pa. 473.   The frame storehouse which remained after the fire was of such a substantial character as to support a lien: Short v. Miller & Co., 120 Pa. 470; Short v. Ames, 121 Pa. 530.

*John B. Storm* and *Charles B. Staples*, for appellee.—That a fire destroying the building extinguishes a mechanic's lien has been decided beyond question: Church v. Stettler, 26 Pa. 246; Wigton & Brooks's Appeal, 28 Pa. 161.   A judgment obtained

on a sci. fa. issued on a void lien is also void : Douden's Appeal, 3 Penny. 153.   On this question see also Norris' Appeal, 30 Pa. 122; Thoma & Blandy's Est., 76 Pa. 30.

OPINION BY ORLADY, J., February 20, 1896 :

This is an appeal of the East Stroudsburg Lumber Company, Limited, from a decree of the court of common pleas of Monroe county, confirming a distribution made by an auditor of a fund arising from sale of the real estate of the Keystone Fibre Company, and dismissing the exceptions filed by appellant thereto.

The Keystone Fibre Company, a corporation, was the owner of a tract of land, upon which were erected certain buildings described in appellant's lien as follows :—Paragraph Third, " The said buildings are described as follows, viz : The first one is a two story brick, intended for the manufacture of wood fibre ware, main building 178 feet long and 42.8 feet wide, and wing attached 178 feet long and 20 feet wide ; the second one is a one story frame building, intended for a store house, 105 feet long and 45 feet wide.   Both are situated on the east side of Washington street in the borough of East Stroudsburg, county of Monroe, and state of Pennsylvania, and the whole tract of land upon which said buildings are situate, being the same premises which Robert W. Reynolds, trustee, by deed dated January 27, 1894, and recorded in the office for recording deeds &c at Stroudsburg, and in and for the county of Monroe, in Deed Book Vol. 45, Pg. 78 &c, granted and conveyed to the Keystone Fibre Company."

On January 24, 1894, the company executed, and placed on record a mortgage for the real estate on which these buildings were erected, to secure a series of bonds, to Robert W. Reynolds trustee for twelve thousand dollars, ($12,000).   On July 28, following a lien amounting to five hundred and eighty-six & $\frac{9}{100}$ dollars, ($586.09), was filed by appellants, by the description above given : " for materials furnished for and about the erection and construction of said buildings, viz : lumber and mill work generally . . . . for and about the erection and construction and upon the credit of said buildings and for the improvement of its real estate, which said buildings and the said materials furnished, in the erection and construction there

of were necessary for the improvement of said real estate, and convenient for the use and enjoyment therof."

On September 3d following, Montgomery & Co., the appellants, secured a judgment against the Fibre Ware Co. upon which writs of execution were issued, resulting in a sale of its real estate, December 8, 1894 (divested of the lien of the mortgage by agreement of the trustee), for the sum of fifty-five hundred dollars ($5,500) which sum less costs etc. is the fund in court for distribution.

Prior to the sale of the real estate, and during the life of the writs of execution, the brick building above described was destroyed by fire.

The auditor, appointed to distribute etc., awarded the whole fund to R. W. Reynolds, mortgagee and trustee, against the claim of the East Stroudsburg Lumber Company, under their lien as material men, and found as facts, that the brick building was the main one, and the *frame* structure was appurtenant thereto, located about thirty-eight feet distant therefrom, and held as matter of law that, as the lien was not apportioned, the destruction by fire of the main structure extinguished the lien on the remaining appurtenance. The distribution made by the auditor was adopted and confirmed by the court below. The five assignments of error are to the decree of the court, dismissing the exceptions filed to the auditor's report, and its absolute confirmation.

The appellant's argument is directed against the conclusions of law, as well as the findings of facts as determined by the auditor. An examination of the testimony, determines as facts, that the Keystone Fibre Company acquired title to the lot of ground by deed dated January 21, 1893, to Robert Reynolds, in trust for the company, who (Reynolds) by deed of January 27, 1894, conveyed the title to the Keystone Fibre Company, a corporation. The frame building had formerly been used as a skating rink, and was on the ground when the company purchased it, and afterward was enlarged and changed in location to be the better adapted to its intended use. It had no original relation to the brick structure, the latter being built after the first had been completed. They were not connected as buildings, but used in connection with each other, the brick building being for the manufacture of wood fibre, and the frame

for the storage of the product.   The buildings were used for a common purpose.   The property was the Keystone Fibre Company Plant, as called by one witness, and as such both buildings were necessary parts of the whole.

The lien filed was "entire, against the main building or manufactory and its appurtenances, known as the plant of the Keystone Fibre Company," as described by the auditor, and as mentioned in the lien as follows: "the said buildings and lot or piece of ground and curtilage appurtenant thereto."   The description of the property in paragraph third of the lien is an averment that the whole of the buildings and machinery (including the brick building) constituted one plant, the works of the Keystone Fibre Company: Linden Steel Co. v. Mfg. Co., 158 Pa. 238.

The description of a property is a sufficient compliance with the act of assembly in furnishing " such other matter of description as shall be sufficient to identify it : " 1 Trickett on Liens, sec. 62.

What was the legal effect of the destruction by fire of the brick building prior to the sale ?   The auditor decided the case on the faith of Wigton & Brooks's Appeal, 28 Pa. 161, which case is based entirely on Presbyterian Church v. Stettler, 26 Pa. 246.   In the last named case, the lien was for " tin roofing, etc.," on a church building which was soon thereafter consumed by fire.   The court held the land was discharged for the reason " when the ground ceases to be covered by such building before the lien was filed, the lien ceases as a matter of course."   In Wigton & Brooks's Appeal, supra, the court held " when the building ceases to exist by its being destroyed by fire, or any other accident, the lien having no longer anything to attach itself to, or in which it can inhere, is gone."   The facts show the total destruction of " a large building forty-three feet high, two hundred and fifty feet long, with two wings, fifty feet square each, on the same lands ; the buildings and ground being designed for holding agricultural and other public exhibitions, the grounds were graded and inclosed with a high tight board fence, with entrances, ticket offices, stalls and pens for cattle, extending around the greater part of the inclosure.   There was a gas works erected in a separate building for the purpose of lighting the main structure," of which the court observes : " The

stalls, ticket offices, gasometer, and shed over it are the mere appurtenances to the main building, and these liens are not filed specifically against them, nor I imagine could they have been: as incidents they follow the fate of the principal.   In some of the claims these outside erections are not named at all, in others they are merely referred to in general terms as appurtenances pertaining to the convenient use of the main building, which alone is described in the manner required by the law.   These claims only purport to bind the sheds, fences, etc., as appurtenances to the building; that being destroyed, they cease to be appurtenant.   It cannot be claimed that although no longer bound as appurtenances, they may be as separate and independent structures, for in that point of view the liens filed are wholly worthless for want of necessary and legal description."   These cases are self sustaining, but are not conclusive against the lien in this case.   This lien was filed against the whole plant or works as such, with specific description of the building and curtilage.   The material was delivered on the faith and credit of the works, and property of the owner, and applied to and used in both structures.   The building, held by the auditor to be appurtenant, was erected as a separate and independent structure before the building to which it is claimed to be appurtenant was built.   It may well be urged that every structure of a large manufacturing plant is appurtenant to every other structure used in connection with it, but to hold that the destruction by fire of one of such buildings would result in discharging the whole plant of mechanics' and material liens, would be carrying Wigton & Brooks's Appeal much further than was intended.   Neither building was superior to the other; each and both were necessary to the successful operation of the business for which they were constructed.   In Linden Steel Co. v. Mfg. Co., 158 Pa. 238, one of the assignments of error raised the very question in controversy here: "lien cannot be sustained against other buildings, if the building for which the materials were furnished, and in which alone they were used, was destroyed before the date of filing the lien," and was answered: "this would constitute a good assignment if the lien had been against the 'pan house,' but it was against the works of which the 'pan house' formed a part, and that only a small fraction of the whole subject of the lien.   The cases cited, Wig-

ton & Brooks's Appeal, 28 Pa. 161, and others, have no applica-
tion to the undisputed facts here." This case was not cited
before the auditor or the judge hearing the case, or doubtless
the distribution would have been changed. The third, fourth
and fifth assignments of error are sustained, and the decree
confirming the auditor's report is reversed, the record remitted
to the court below, that distribution be made to the lien of the
East Stroudsburg Lumber Company, Limited, debt five hundred
and eighty-six and $\frac{9}{100}$ dollars, ($586.09), with interest to date
of sale and costs. Costs of this appeal to be paid by appellee.