## Strawbridge, Appellant, *v.* Hawthorne.

*Practice, C. P.—Judgment n. o. v.—Rights of plaintiff—Act of April 22, 1905, P. L. 286.*

1. In determining as to the correctness of a judgment n. o. v. under the Act of April 22, 1905, P. L. 286, the test is whether binding direction for the defendant would have been proper at the close of the trial. In applying the test, the plaintiff must be given the benefit of every fact and inference of fact pertinent to the issue, which the jury could legitimately find from the evidence before them.

*Contract—Sales—Special knowledge of vendor—Warranty.*

2. Where a general dealer holds himself out to the public as a vendor of veterinary supplies, and his clerk when asked for raw linseed oil as medicine for a horse, draws boiled linseed oil, a poisonous substance, from a can standing next to that containing raw linseed oil, and the purchaser has no means of knowing from inspection that he has been delivered the wrong article, the transaction involves an implied warranty on the part of the vendor that the oil delivered was of the kind ordered, or at least, that it was not of a different kind which would be poisonous if administered as a veterinary remedy. In such a case the rule of caveat emptor does not apply as in ordinary cases of sale by inspection.

Argued April 10, 1911.   Appeal, No. 78, April T., 1911, by plaintiff, from judgment of C. P. Crawford Co., Feb. Term, 1908, No. 87, for defendant non obstante veredicto in case of Francis H. Strawbridge v. S. A. Hawthorne.

648 STRAWBRIDGE, Appellant, *v.* HAWTHORNE.

Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ. Reversed.

Assumpsit to recover damages for the death of a horse. Before Prather, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the jury returned a verdict for plaintiff for $229.09. Subsequently the court entered judgment for defendant n. o. v.

*Error assigned* was in entering judgment for defendant n. o. v.

*Edmond C. Breene,* with him *W. J. Breene,* for appellant.—The court is not justified in entering a judgment non obstante veredicto, under the Act of April 22, 1905, P. L. 286, except where binding instructions would have been proper at the close of the trial: Shannon v. McHenry, 219 Pa. 267.

In all sales, there is an implied warranty that the article corresponds in species with the commodity sold, unless there are facts and circumstances existing in the cases, of which the jury under the direction of the court are to judge, which clearly show, that the purchaser took upon himself the risk of determining not only the quality of the goods, but the kind he purchased, or where he may waive his right: Borrekins v. Bevan, 3 Rawle, 23; Joseph v. Richardson, 2 Pa. Superior Ct. 208.

*Axtell J. Byles,* with him *George F. Davenport,* for appellee.—Where goods are sold on inspection or with reasonable opportunity for inspection there is no standard but identity, and no warranty implied other than that the identical goods sold, and no others, shall be delivered: Lord v. Grow, 39 Pa. 88; Carson v. Baillie, 19 Pa. 375; Shisler v. Baxter, 109 Pa. 443; Mahaffey v. Ferguson, 156 Pa. 156; Weimer v. Clement, 37 Pa. 147; Wetherill v. Neilson, 20 Pa. 448; Ryan v. Ulmer, 108 Pa. 332; Pyott v. Baltz, 38 Pa. Superior Ct. 608.

OPINION BY RICE, P. J., October 9, 191,1:

This case is before us on appeal from judgment n. o. v. under the Act of April 22, 1905, P. L. 286. In determining as to the correctness of the judgment, the test is whether binding direction for the defendant would have been proper at the close of the trial: Dalmas v. Kemble, 215 Pa. 410; Shannon v. McHenry, 219 Pa. 267. In applying the test the plaintiff must be given the benefit of every fact, and inference of fact, pertinent to the issue, which the jury could legitimately find from the evidence before them. Although there were some conflicts of evidence, the jury, by resolving the conflicts in favor of the plaintiff, could have found the facts substantially as follows: The plaintiff, having a horse needing medical treatment, was directed by a veterinary surgeon to administer raw linseed oil as a physic. Accordingly, he sent his brother to the defendant's store to obtain twenty-five cents' worth—about three pints—of raw linseed oil. Upon arriving at the store, the brother found the defendant's clerk, who was his son, in charge, and, producing the two bottles he had brought for the purpose, asked the latter for the desired quantity of raw linseed oil. What occurred is thus described by this witness: "I went in and told Mr. Hawthorne I wanted 25 cents' worth of raw linseed oil; I says 'I want the raw now; I want to give it to a horse to physic him out.' He says 'Gee, I would say you were going to give him a hell of a physic.'" The clerk, in view of the plaintiff's brother, drew the required quantity of oil from one of two cans marked, respectively, B and R, and delivered it to the latter; but it proved to be, not raw, but boiled linseed oil, and, in consequence of its being administered to the horse, the horse died. Raw linseed oil is commonly used as a physic for horses, but the article known commercially as boiled linseed oil is rated as a poison. The difference between the two kinds of oil can be detected by experts and those familiar with the use of both kinds, but is not readily apparent to other persons. Although the plaintiff's brother on previous occasions had bought

raw linseed oil at the defendant's store, to be used as a physic for horses, he was unable to distinguish it from boiled linseed oil by personal inspection. The defendant kept a general store, and, by advertisements and otherwise, held himself out to the public as a vendor of groceries, dry goods, hardware, paint, patent medicines, and "veterinary supplies." It is a fair and reasonable inference from the testimony, that at the time of this sale he had on hand both kinds of linseed oil in the two cans standing side by side above referred to.

The plaintiff contends that there was an implied warranty that the linseed oil delivered corresponded, in species, with the linseed oil ordered, and that there was a breach of the warranty. The defendant contends that the subject of sale was the oil the plaintiff's brother saw drawn from the can, and that, as this was the identical article delivered, the case is within the general rule that where goods are sold on inspection, or with reasonable opportunity for inspection, there is no standard but identity, and no warranty implied other than that the identical goods sold, and no others, shall be delivered. As already pointed out, although the plaintiff's brother saw the oil being drawn, he was in no better position, so far as determining whether it was of one kind or the other, than if he had not seen it drawn and it had been delivered to him in a covered and sealed package; at least, the jury could have so found. The logical conclusion to which the argument of defendant's counsel leads is, that this makes no difference; it was still a sale on inspection and is governed by the rule applicable to ordinary transactions of that kind. The trial judge, as well as the counsel on both sides, has reviewed and discussed learnedly and with painstaking fullness the leading Pennsylvania cases bearing upon the question of the extent to which the law implies a warranty in the sale of chattels. But after an examination of them and other cases, we feel warranted in affirming that if the case of Lord v. Grow, 39 Pa. 88, does not sustain the defendant's position, there is no well-considered decision of binding authority that

does.  It will be well, therefore, to recite the facts of that case and to consider whether the principle upon which it was held that there was no implied warranty of species is of such general and universal application as to be controlling in a case like the present.  According to the report of the case, the plaintiff went to the defendants, who were dealers in grain, for the purpose of purchasing seed spring wheat for sowing.  He asked one of the defendants whether he had any good seed spring wheat.  The defendant answered in the affirmative.  The plaintiff wished to see it, when the defendant told him it was at his mill, but he would give him an order for it.  He wrote an order for three bushels of wheat, the quantity desired, omitting description, which the plaintiff took to the mill and was shown wheat, which the miller told him was the spring wheat which the defend-ant had brought from the west.  The plaintiff took the wheat which he and the miller thought was spring wheat (there being both kinds in the mill), and sowed it; but it proved to be winter wheat, spread all over the ground, none of it heading out or coming to maturity, so that he lost his crop, as well as his labor and the use of his ground. It was conceded that no one, upon inspection, can tell the difference between spring and winter wheat.  Strong, J., who delivered the opinion of the Supreme Court, said: "We have here the bald question whether, in sales of per-sonal property on inspection, without express warranty, the law presumes an engagement on the part of the vendor, that the article sold is of the species contemplated by the parties."    Then, after referring to certain exceptional classes of cases, he proceeded: "The case before us is not one of this character.  The wheat was not sold by sample, and neither the contract of sale, nor the identity of the article, was defined by a bill of parcels.  Nor was the sub-ject of the contract a manufactured article, ordered and supplied for a particular purpose.  True, the difference between spring wheat and other wheat is not ascertainable by inspection, and it may be assumed that they are not the same in species.  Still, the case is one of a purchase on

inspection of an article, of which the vendor's means of knowledge were no greater than those of the vendee." Later in the opinion he quoted the rule of the common law as announced in Carson v. Baillie, 19 Pa. 375, as follows: "That where goods are sold on inspection, there is no standard but identity, and no warranty implied other than that the identical goods sold, and no others, shall be delivered. The name given to them in the bill is then immaterial, because faith was placed, not in the name, but in the quality and kind discovered on inspection." Justice STRONG concluded his opinion with these words: "To the purchaser of goods on inspection, the language of the law is 'caveat emptor.' There may be a few exceptions, such as we have referred to, but a sale of such an article as wheat is not one of them. When the purchaser has seen it, and gets what he saw, no warranty is implied that it is properly described by the name which the vendor gives to it." It cannot be denied that Lord v. Grow is in many particulars very much like the case at bar. It is, nevertheless, distinguishable upon a principle which is recognized in the case itself. For Justice STRONG said, after speaking of sales made by sample: "The tendency of the modern cases has also been to the doctrine that in sales of articles in regard to which the seller is presumed to have superior knowledge, there is a warranty that the thing sold shall be in kind what it is represented to be. Illustrations of this are found in sales of wines by wine merchants, of jewels by a jeweller, and of medicines by a druggist. In this class of cases, the buyer and the seller do not deal on equal terms. The vendor is professedly an expert. His trade invites confidence in his representations, and confidence is usually reposed. So far, in modern decisions, there has been a departure from the rule laid down in Chandelor v. Lopus."

It will be observed that the decision was predicated of the purchase of an article on inspection, "of which the vendor's means of knowledge were no greater than those of the vendee," and that the general rule was conceded to

have exceptions growing out of the superior knowledge which, in the circumstances, the vendor is presumed to have. In Shisler v. Baxter, 109 Pa. 443, this qualifying principle was recognized. as inhering in Lord v. Grow; for, in stating the rule for which that case was cited as authority, Chief Justice MERCUR said: "So in a sale of personal property on inspection, and where the vendee's means of knowledge are equal to the vendor's, the law does not presume an engagement by the vendor that the thing sold is of the species or kind contemplated by the parties." Later in the opinion in Shisler v. Baxter, a case which grew out of the sale of Wakefield cabbage seed, the chief justice said: "They sold it just as they had bought it, in entire good faith. The vendee had just as much knowledge in regard to the kind and quality of the seed as they had.". The materiality and importance of the vendor's superior knowledge of the species of the article he is delivering, and his knowledge of the purpose for which the purchaser is buying it, are recognized in other cases and by text writers. They constitute a distinguishing feature of this case. True, the defendant was not a druggist, but he held himself out to the public as a vendor of veterinary supplies. He thereby invited confidence in him as a competent dealer in veterinary remedies, and he knew, through his agent, that the oil was being purchased and was to be used as a veterinary remedy. Again, this is not a case, like Shisler v. Baxter, of a dealer delivering as raw linseed oil what he had bought as such but of a dealer who had both kinds, delivering as raw linseed oil, which is a useful veterinary remedy, boiled linseed oil, which not only differs in species, but is poisonous. If not a conclusive presumption of law, it certainly is a fair inference of fact which a jury may draw, that such a dealer, having the two kinds of oil which so closely resemble each other as to be indistinguishable by the ordinary purchaser, has knowledge superior to that of the latter of the kind of oil being delivered. And it is obvious that the ignorance or inattention of the clerk, whom for the time being he has placed in charge of his busi-

ness, will not relieve him from the responsibility growing out of his superior knowledge and the other facts to which we have alluded. Upon consideration of all the facts which a jury could find from the evidence before them, we conclude that this was not a case for binding direction, but was properly submitted to the jury with instruction that, if they found all the facts to which we have alluded, there was an implied warranty that the oil delivered was of the kind ordered, or, at least, that it was not of a different kind which would be poisonous if administered as a veterinary remedy.

In concluding this opinion, although not necessary in the determination of the case, it is appropriate to say a word with regard to the following clause of our opinion in Joseph v. Richardson, 2 Pa. Superior Ct. 208: 'All of the authorities agree that there is an implied warranty that the article delivered shall correspond in species with the commodity sold, unless there are facts and circumstances to show that the purchaser took upon himself the task of determining not only the quality of the article but the kind he purchased." As to sales by sample or of property not present, which the seller knows the purchaser has not seen, but which he buys upon the representation of the seller, this is a sufficiently accurate statement of the law. But as a broad, general statement of the entire law upon the subject of implied warranty of species, it is open to the criticism that it does not specifically and with sufficient clearness exclude cases, coming within the general rule as to sales on inspection, in the proper sense of that term. We have endeavored to show, however, that even with that qualification of the general rule as stated by us, the special facts of this case, taken as a connected whole, are sufficient to raise an implied warranty, or, as some writers define it, a condition, for the breach of which the plaintiff was entitled to recover.

The judgment is reversed, and the record is remitted to the court below with direction to enter judgment on the verdict.