## Fisher v. Groff et al.

*Alfred C. Alspach,* for plaintiff.
*Chas. W. Eaby, Jr.,* for defendant.

WISSLER, J., January 21, 1955.—This is a matter arising on a scire facias on a mechanic's lien by claimant, George A. Fisher, against the three named defendants. The case came to trial before a jury and on November 16, 1954, a verdict was rendered in favor of claimant, George A. Fisher, and against defendants in the sum of $4,392.78 (no interest to be added thereto). On November 19, 1954, defendants filed a motion and eight reasons for a new trial and a motion for judgment n. o. v.

Claimant and defendants entered into a written contract on June 16, 1954, for claimant to install a two-room walk-in refrigerator in the building of defendants in the Borough of Elizabethtown, Pa., for the sum of $5,450, to be paid in full within 30 days from the completion of the job. Claimant performed part of the work in accordance with the contract, but has never completed the work because of a fire breaking out in the refrigerator room while claimant and an employe were working there, and since the fire no work has been done by claimant.

The first three reasons of defendants for new trial are based on the verdict being against the law, the evidence, and the weight of the evidence. It is well settled that a new trial will not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion: Wilson v. Kallenbach, 332 Pa. 253. A complaint that a verdict is against the evidence is applicable to a case only when there is no conflict in the testimony: Landis, Admx., v. Conestoga Transportation Company et al. no. 1, 349 Pa. 97. It is true, as a general rule, that a new trial will be granted where the verdict is clearly against the weight of the evidence, but it is equally true that in order to warrant the granting of a new trial on such ground the preponderance of the evidence must be clear and decisive. This court feels that there was more than a scintilla of evidence to support the verdict, and that a new trial should not be granted for either of the first three reasons assigned.

As to the fourth, fifth and sixth reasons, namely: "(4) The verdict was against the charge of the court; (5) The learned court erred in charging the jury that they could find a verdict in favor of the claimant; (6) The learned court erred in submitting to the jury the question as to the building being destroyed by fire; since all the evidence was to the effect that the building was destroyed by fire"; the court feels that it fairly presented to the jury the questions of fact involved when it submitted the contentions of claimant and defendants in its charge: "Now, it is the contention of the plaintiff that he substantially performed his part of the written contract of June 16, 1954, entered into between himself and the defendants, and that he was prevented from full performance because of the fire and also because of the defendants, and that he had obtained and had available to the defendants the

remainder of the equipment not installed before the fire at a cost in amount of $2,315.34, and that the amount of the materials installed was $2,077.44. It is further the contention of the plaintiff that the building in which the materials were installed was not constructed by him and that the building of which the installation of the refrigerators formed a part was not so destroyed as to be nonusable in its then present condition. The defendants, on the other hand, contend that the building in which the plaintiff's installations were made was destroyed by fire and there was no building left against which the plaintiff's mechanic's lien could be filed, and that plaintiff did not complete the written contract of June 16, 1954, before the fire, which contract called for payment in full within 30 days of completion. It is for you to determine which of these contentions you believe." And the court further affirmed defendants' fifth point, namely: "No. 5. If you find that the building in question was substantially destroyed, your verdict must be for the defendants. That point is affirmed."

As to the seventh reason, namely: "(7) The learned court erred in refusing defendants' motion for a nonsuit"; the refusal to enter a compulsory nonsuit is not the subject of review or a proper reason for a new trial (Commonwealth, to use, v. Whittaker & Diehl Co. et al., 44 Lanc. 580; Northern Trust Co., Exec., v. Huber et ux., 274 Pa. 329), and hence this reason need not be considered.

In the eighth reason assigned, namely: "(8) The learned court erred in permitting over exceptions of the defendants' for plaintiff to amend his answer to the question, 'Was this building destroyed by fire?', to which the defendants reply 'yes'," the words "destroyed by fire" could mean partial or total destruction, and to be asked to explain in reëxamination after having previously testified to what was damaged in

parts of building and refrigerators would seem proper, and a reasonable exercise of discretion on the part of the trial judge. As to matters that require explanation or where new matter is introduced by the opposing interest, a party has a right in rebuttal to reëxamine his witness: Asay v. Hay, 89 Pa. 77. The extent of reëxamination is within the discretion of the trial judge: Stern, Trustee, v. Stanton et al., 184 Pa. 468.

Defendants do not in their oral argument raise any question as to the amount of the verdict, nor make a distinction between materials already placed in the building and those that had not been so placed before the fire, nor do they raise the question of partial performance and claim that the contract itself has no bearing on the question involved. Their contention is that the mechanic's lien is invalid because there was no building upon defendants' land after the fire to which the lien could attach. This, then, brings us to defendants' motion for judgment n. o. v. The sole question for determination on a motion for judgment n. o. v. on the whole record, after a request for binding instructions, is whether such request should have been granted: Strawbridge v. Hawthorne, 47 Pa. Superior Ct. 647. A trial court cannot enter judgment n. o. v. because of inconsistency in the testimony: Willetts et al. v. Butler Township, 141 Pa. Superior Ct. 394. A motion for judgment upon the entire record must be disposed of upon the record as it existed at the close of the trial. The court can neither eliminate evidence which may have been improperly admitted, nor insert offers of evidence which should have been admitted but were excluded; the remedy in either case is a new trial: Mincy v. Washington National Insurance Company, 130 Pa. Superior Ct. 285.

The evidence, considering it in the light most favorable to claimant as the court is required to do, warrants a finding that claimant was by written contract

to build two walk-in refrigerators in a concrete block building of defendants, which building with roof was erected previously by another builder for defendants. However, claimant put in the plumbing and drains in the floor, which was done while the builder was putting up the blocks and before the concrete floor was put it. The walk-in refrigerators consisted of two rooms with a connecting door, one a chill box and the other a holding room. The sides and ceiling were put on with enamelite and cork and finished with a white layer of plaster. Claimant also did the wiring. The door jambs were set in with the blocks at the time the wall was constructed. The doors themselves (11 feet 6 inches high by 3 feet) were made up by the Jamison Door Company of Hagerstown, Md., but had not been hung at the time of the fire. The dimensions of the two walk-in refrigerators were approximately 14 feet high, 13 feet deep, and 6 to 10 feet wide. On June 21, 1954, while claimant and his employe were working on the premises, a fire broke out in the refrigerator rooms. At the time of the fire the cost of the items already installed amounted to $2,077.44, and the remaining equipment held in stock by claimant to be installed amounted in cost and freight to $2,315.34, which claimant agreed to help defendant to dispose of if he didn't use it at some later date. But for the fire the entire contract would have required about 30 hours of labor. Claimant was prevented from full performance of the contract because of the fire and because of defendants' conduct, and at the time of the filing of the lien the job had been completed, but not by claimant.

Claimant testified in cross-examination:

"(Q) What damage was done to the building you were working in? (A) So far as I could see there wasn't too much damage done to that building, maybe a couple top courses of block, I would say the two top courses at the most. The first layer of cork wasn't damaged, some

of it was knocked off from water pressure of the hoses. The last layer was charred, some a quarter of an inch and some half an inch. Of course some of that was knocked down. The ceiling, I don't know what damage was done above the insulated part. There was firemen up there. I don't know whether they chopped holes in the roof or not. They were up there working. What damage was caused there I don't know. (Q) Didn't you ever go back again to look at the damage? (A) I had went back with Mr. Gerber, or when Mr. Gerber was there, and he and I looked at it and we examined the cork. (Q) Don't you know the roof was burnt through? (A) The roof was possibly burned through; it wasn't burned through the insulation of cork. (Q) I asked whether the roof wasn't burned through? (A) I don't know . . . (Q) Isn't that correct? Mr. Fisher, this building was destroyed by fire, was it not? (A) Yes." Later on, in redirect examination claimant testified:

"(Q) Mr. Fisher, you have testified to certain damage done to the refrigerators by fire. Mr. Eaby has asked you if the property was destroyed. What do you mean by destroyed? (A) Well, it was damaged by fire. I mean it wasn't completely destroyed, the garage didn't burn. I mean that the adjoining building—(Q) I am referring particularly to this refrigerator, itself. You have testified—(A) Yes, there was damage done to it. It wasn't completely destroyed; it was damaged by fire. (Mr. Alspach) That is all." Harold K. Brinser testified as a witness for defendants:

"(Mr. Eaby) Now, for the purpose of the record, Mr. Alspach, I propose to ask this witness whether or not, in his opinion, this building was destroyed by fire. . . . (Q) As a result of that, in your opinion, was this building destroyed by fire? (A) Yes."

Paul H. Gerber testified:

"(Q) In your opinion was this building destroyed by the fire, that is the first building you put up? . . . (A) From a utility point of view the building was destroyed." In cross-examination the same witness testified:

"(Q) It could not be used in its present then condition? (A) That is right. (Q) If I understand, certain things would have to be done before use could be further made of it; is that right? (A) That is right. (Q) You don't want us to understand that it was a total loss and had no utilitarian value, do you? (A) May I put it this way, sir? In estimating for insurance purposes I was required to estimate the cost of foundation, plus walls, roof, windows, doors, and the insurance company looked at that as the total cost of the building. To arrive at the fire loss the one had to be discerned against the other. I hope I make myself clear. (Q) I think you made yourself clear when you stated the building could not be used. I understood you to say the building could not be used in its then condition? (A) That is right."

The gravamen of defendants' contention is that the court should have taken away from the jury the consideration of whether the building was destroyed, and affirmed defendants' point for binding instructions, and in support of this contention cite the Presbyterian Church v. Stettler, 26 Pa. 246, and Wigton & Brooks' Appeal, 28 Pa. 161, which cases clearly establish the general principle of law that a mechanic's lien attaches to the building on the land, and when the building is destroyed the lien ceases.

It seems there is only one Pennsylvania case (lower court), as to partial loss of a building, being I. L. Lehr & Son v. Frank Schroth et al., 1 Lehigh 4, which is a case in which the building proper was three stories high. The portion of the building which remained was the cellar walls and the one-story continuation of the

building in the rear; the principal part of the three-story building was completely destroyed. It was held that no right to file a mechanic's lien existed. It was stated that if the portion of the building which remained had been erected as a separate and independent structure, the conclusion might have been different, citing these cases: Linden Steel Co. v. Rough Run Mfg. Co., 158 Pa. 238, and East Stroudsburg Lumber Co. Appeal, 1 Pa. Superior Ct. 261.

In 57 C. J. S. 815, §242, it is stated:

"A partial destruction of a structure or improvement does not defeat the lien entirely; it may attach to the remains of the building or the materials or machinery saved. . . ."; Butler v. Ng. Chung, 160 Cal. 435, 117 Pac. 512; Holland v. Farrier, 75 Ind. App. 368, 130 N. E. 823. The Butler case, supra, is significant in that the Pennsylvania rule that no lien is valid where the building· is compeltely destroyed, whether the lien was filed before or after it, is followed in California. In 18 R. C. L. sec. 17, page 889, it is stated:

"The statutes not infrequently have designated the character of improvement in respect to which a lien may be acquired as a 'building.' And where the acts have failed to designate the kind of 'building' contemplated, the meaning of that term has become a matter of judicial inquiry. The modern tendency seems to be toward holding it to include any structure that in any reasonable sense may be known as a 'building,' and is of a substantial and permanent character, . . . ." citing the case of Wheeler v. Pierce, Kelley & Co.; 167 Pa. 416. In this case at page 425 it was said:

"It is true there is no building erected around and over the boiler plant to protect it from the weather. But upon that subject, in Short v. Miller, 120 Pa. 470, we said, Paxson, J., 'The act of assembly does not designate the character of the buildings to which a

mechanic's lien may attach. . . . . Nor are we embarrassed with the question whether buildings of any description are essential to an oil refinery. An engine and boiler for any kind of a manufactory, do not absolutely require a building to protect them. Both may stand in the open air, yet no one doubts that if an engine and boiler house are erected to protect them from the weather, a lien will attach for labor and materials used in their construction. Nor have we any doubt that the lien attached to the building in this case.' In Short v. Ames & Keese, 121 Pa. 530, which was a claim of lien upon an oil refinery, Mr. Justice Clark, delivering the opinion, said, 'The act of June 16, 1836, as we said in that case, does not designate the character or kind of a building to which a mechanic's lien will attach; if the structures are of a substantial and permanent character, and may in any reasonable sense be known as buildings, they may be incumbered by lien'." Also see Garber & Sons, Inc., v. Draper et ux., 89 D. & C. 235; Haas v. Wagner, 78 D. & C. 478.

The reason for the Pennsylvania rule that no lien is valid when the building is completely destroyed is quite obvious, as there would be nothing left to which the lien could fasten. As the ground is only incidentally subjected to the holding of the lien because the building is on it, there can be no continuance of that hold if the building is no longer there. In other words, a mechanic's lien cannot be filed against a hole in the ground. However, that is a far cry from only a partial destruction, as where the wall still remains as well as the greater part of the roof of the building, and likewise where the concrete floor in which the plumbing was installed by claimant still remained intact. This court feels that the question of whether the building of which the installation of the refrigerators formed a part was or was not so destroyed by the fire as to be nonusable in its then present condition, and the

question as to whether what remained of the structure or building was of a substantial and permanent character, were properly submitted to the jury.

And now, January 21, 1955, for the foregoing reasons, the rule for a new trial is discharged, and the court overrules the motion for judgment non obstante veredicto, does hereby certify the evidence in the above-captioned case, and enters judgment upon the verdict in favor of plaintiff.